In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1148

SHUN WARREN,

*Petitioner-Appellant,*

*v.*

MICHAEL BAENEN, WARDEN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 09-C-0919—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED OCTOBER 29, 2012—DECIDED APRIL 3, 2013

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Shun Warren shot and killed Deshan Morrow on June 3, 2002, during a marijuana sale that went tragically wrong. Although Warren was originally charged in state court with first-degree intentional homicide, he eventually pled no contest to first-degree reckless homicide, a reduced charge. Soon after entering the plea, Warren began attempting to withdraw it, a process that continues here. Warren

appears before us as a habeas corpus petitioner, having fought his 40-year sentence through the Wisconsin court system and in federal district court. He argues that the state trial court's refusal to allow him to withdraw his plea deprived him of due process and that he received unconstitutionally ineffective assistance of counsel throughout his state court proceedings. Like every other court to consider Warren's arguments, we find that they lack merit.

## I. BACKGROUND

The events of June 3, 2002, are, to this day, a bit unclear. It suffices to say that at some point during the day Shun Warren acquired a handgun from his friend, Stormi Dixon, and arranged to buy marijuana from Deshan Morrow, a source he had used before. Warren met Morrow in Morrow's car around 5 p.m. that day. Before the sale could be completed, a scuffle broke out. Morrow was shot multiple times. Warren fled the scene with the marijuana and the gun; Morrow was discovered and pronounced dead on the scene later that evening. Warren was arrested in Chicago on June 24, 2002.

Prosecutors originally charged Warren with first-degree intentional homicide, Wis. Stat. § 940.01, a charge to which he pled not guilty on July 16, 2002. (R. 21-10.) The criminal complaint included allegations that Warren acquired the gun and arranged the marijuana sale with the express intention of robbing Morrow and that Morrow's death was the result of a heist gone wrong. The court assigned a public defender, Cynthia Wynn, to represent Warren.

From early in her representation, Wynn focused Warren's attention on the possibility of a plea bargain. As Warren now tells it, the only advice that Wynn gave him prior to entering his plea was that if he went to trial he would, in all likelihood, be found guilty and sentenced to life in prison. Warren, with Wynn's assistance, ultimately came to an agreement on a plea deal with the prosecutors. He agreed to plead no contest to the reduced charge of first-degree reckless homicide as party to a crime, while armed. Wis. Stat. §§ 939.05, 939.63, 940.02(1). According to the transcript of the plea hearing, all parties understood that Warren pled "no contest" rather than "guilty" because he was intoxicated on the day in question and could not "recall all of the facts surrounding the incident." (R. 21-11 at 6); (*id.* at 13, 18.) He did agree (despite having been intoxicated) that he brought the gun into Morrow's car, that there was a scuffle while in the car, and that the gun was fired several times. (*Id.* at 13-15.) Warren additionally acknowledged that Morrow was killed "as a result of [Warren's] actions." (*Id.* at 15.)

Soon after entering his plea, however, Warren began attempting to withdraw it and expressing displeasure with Wynn's representation. The court granted Wynn's request to withdraw as counsel and appointed attorney Theodore Nantz in her place. With Nantz as Warren's counsel, the court heard a motion to withdraw Warren's no contest plea and, on March 20, 2003, rejected the motion as not meeting Wisconsin's "fair and just reason" standard. (R. 21-13.)

Warren appealed this decision to the Wisconsin Court of Appeals with the help of Anne Bowe, yet another appointed attorney. The Court of Appeals rejected Warren's appeal in April 2005. (R. 21-6.) Warren next petitioned the Wisconsin Supreme Court for review; the court denied the petition in August 2005.

Warren continued his quest to withdraw the plea through Wisconsin's collateral review process. *See* Wis. Stat. § 974.06. This time, Warren alleged ineffective assistance of his various attorneys and that his sentence was too harsh because his attempt to withdraw his plea was held against him. The state trial and appellate courts denied his petitions, and the Wisconsin Supreme Court denied his request for review.

After exhausting his state court remedies, Warren filed a *pro se* petition for a writ of habeas corpus in the federal district court. Warren again alleged a mix of ineffective assistance and due process claims. Like the state courts, the district court denied relief. *Warren v. Pollard*, No. 09-C-919, 2011 WL 6016630, at *1 (E.D. Wis. Nov. 30, 2011). The district court did, however, grant Warren a certificate of appealability on five of the eight claims he raised: (1) whether trial counsel Wynn provided effective assistance; (2) whether Warren was denied due process when he was not allowed to withdraw his plea; (3) whether sentencing counsel Nantz provided effective assistance; (4) whether Warren was denied due process at his sentencing hearing; and (5) whether appellate counsel Bowe provided effective assistance. (R. 34.) Warren timely appealed the denial of

his petition to this court. Accordingly, we review each of the five issues raised in rough chronological order.

## II. ANALYSIS

Although we review all questions of law from a district court's denial of a habeas corpus petition *de novo*, *Emerson v. Shaw*, 575 F.3d 680, 685 (7th Cir. 2009), our consideration of Warren's petition is tightly circumscribed. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that we may grant a writ of habeas corpus to a petitioner whose claim has been adjudicated on the merits in state court if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if the relevant state court decision "was based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2). Warren roots his challenges in § 2254(d)(1). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established Federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id*.

This standard is particularly exacting. "[A] state prisoner must show that the state court's ruling on the

claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (internal citation and quotation marks omitted). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

However, AEDPA's deferential standard only applies to claims that were actually "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). In that case, the decision we review "is that of the last state court to address a given claim on the merits." *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. But that "presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 785. When no state court has addressed the merits of the federal constitutional issue, "the claim is reviewed *de novo*." *Cone v. Bell*, 556 U.S. 449, 472 (2009).

*A. Ineffective Assistance of Trial Counsel*

Whether trial counsel Wynn provided Warren with effective assistance is a question that echoes through each of the other issues in this case. Accordingly we take it up first. In brief, we agree with the district court that we cannot grant Warren's petition on this ground.

The standard governing Warren's ineffective assistance of counsel claim is the familiar two-prong *Strickland v. Washington* test. 466 U.S. 668 (1984). To demonstrate that Wynn violated Warren's Sixth Amendment right to effective assistance of counsel, he must show first that her performance fell below "an objective standard of reasonableness," *id*. at 688, and that she committed "errors so serious that [she] was not functioning as the 'counsel' guaranteed [Warren] by the Sixth Amendment," *id*. at 687. In evaluating Warren's argument, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. And to satisfy the second prong, Warren must prove that Wynn's constitutionally deficient performance (if any) prejudiced him, i.e., that her "errors were so serious as to deprive [Warren] of a fair trial, a trial whose result is reliable." *Id*. at 687. This means that Warren "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

With that backdrop in mind, we proceed to the specifics of Warren's case. He alleges two broad categories of error on Wynn's part: a failure to investigate and a

failure to communicate. We address those alleged failures in turn.

## 1. Failure to investigate

Warren alleges that Wynn failed to investigate witnesses that potentially could have showed that Warren had a valid self-defense claim, and additionally that Wynn failed to investigate Warren's mental competence to enter his plea. In a failure to investigate case, a defendant must prove that evidence uncovered during that investigation would have led the attorney to change her recommendation to accept the plea offer. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "This is an objective analysis that requires us to examine what a reasonable person would do." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (*per curiam*) (*citing Hill*, 474 U.S. at 60).

### a. Witness statements

Warren first argues that Wynn was ineffective because she failed to investigate a statement included in the police report on Morrow's killing. The statement at issue was a third-hand description of some of the events that led to Morrow's death. Mary Washington, a local resident, apparently observed two people struggling in the front seat of Morrow's car as she arrived home after work. Mary relayed this story to her sister, Linda Washington, the next day when she discovered that a killing had taken place. Linda, in turn, gave a statement

to the police. Warren characterizes Mary Washington (and perhaps Linda) as a "potential witness who could corroborate a self defense claim." (Appellant's Br. at 10.) Warren argued to the Wisconsin state court on post-conviction review, and argues to us here, that Wynn's failure to further investigate this statement in the police report constituted ineffective assistance of counsel.

We begin by looking for "the last state court [opinion] to address a given claim on the merits." *Harris*, 698 F.3d at 623. The Wisconsin Court of Appeals rejected Warren's motion for post-conviction relief on *res judicata* grounds, describing his ineffective assistance claims as a mere "re-characterization" of the arguments he had made (and that were rejected) on direct appeal. (R. 21-1 at 6) (*citing State v. Witkowski*, 473 N.W.2d 512, 514 (Wis. Ct. App. 1991)). Following the court's implicit instruction, then, to look to the Court of Appeals's decision on direct appeal for a decision on the merits, we find that this court decided a related, but distinct, issue. Specifically, it held that Warren's knowledge of the availability of self-defense as an affirmative defense to first-degree intentional homicide did not provide a "fair and just reason" to withdraw his plea to first-degree reckless homicide. Because there is no such defense to reckless homicide, Warren's intent at the time of the crime was, according to the court, irrelevant. As a determination of Wisconsin state law, we must presume that is correct. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977) ("in the context of a federal habeas proceeding [courts are] excluded from consider[ing] any questions of state substantive law"). But it does not fully address the ineffec-

tive assistance issue. Recall that the relevant ineffective assistance question is whether evidence that an attorney failed to investigate would have led the attorney to change her plea recommendation. *Hill*, 474 U.S. at 59. Knowing about a potential self-defense claim might not be directly relevant to reckless homicide; indeed the state court definitively held that it was not. But self-defense evidence *would* be relevant to the decision on whether to plead to reckless homicide *to avoid prosecution for intentional homicide*. The self-defense evidence might make an intentional homicide conviction much less likely. And without the threat of an intentional homicide conviction hanging over her client's head, an attorney might be much less likely to recommend that the client plead to a lesser charge.

Thus, the state court's opinions did not actually address the constitutional issue at stake here. *Cone v. Bell* is an apt guide for this circumstance. 556 U.S. 449. There, the state post-conviction court bypassed a *Brady* claim because it erroneously believed that the issue had been addressed on direct appeal. *Id.* at 460. Because the state courts did not reach the merits, AEDPA deference did not apply and *de novo* review was proper. *Id.* at 472. Similarly, we review this aspect of Warren's ineffective assistance of counsel claim *de novo*.[1] Even with

---

[1] The additional wrinkle in this case is that the state trial court *did* address Warren's *Strickland* claim on post-conviction review. We are loathe to defer to that decision, however, (continued...)

*de novo* review, however, Warren's arguments are not convincing.

Warren essentially makes the argument we have laid out above. It matters, says Warren, that the initial charge he was facing, first-degree intentional homicide, has a mens rea requirement. Therefore, the availability of a witness who could testify that Warren was defending himself would have changed Wynn's advice, and consequently Warren's decision to plead. As we have discussed already, this argument is not without force. One could imagine evidence that might have changed, perhaps dramatically, Warren's bargaining position vis-à-vis the prosecution in pre-trial negotiations. Such evidence might have led a reasonable attorney to change her recommendation to plead.

Here, however, we are not persuaded that Warren overcomes the initial hurdle of proving that, "but for [Wynn]'s unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. There was nothing in the Washingtons' statements that would support Warren's self-defense claim. The description of a "struggle" in the car could have just as easily described the version of events presented by the prosecu-

---

[1] (...continued)
because it was superceded, albeit, we think, erroneously, by the subsequent Wisconsin Court of Appeals opinion. We think addressing the issue *de novo* strikes the proper note of respect for the Wisconsin courts, while still ensuring that we fulfill our appropriate function on habeas corpus review.

tion. Indeed, all parties already agreed that some sort of struggle occurred in Morrow's car; the Washingtons' statements did not add anything new to Warren's hypothetical defense. While one *could* imagine evidence that would have changed the plea calculus, the Washingtons' statements are not that evidence. On the basis of the Washingtons' statements it is profoundly unlikely that Wynn would have changed her advice that Warren plead to first-degree reckless homicide—and that is the rub. *See Hill*, 474 U.S. at 59 (stating that the prejudice inquiry in a failure to investigate/plea scenario "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial."). Thus, we do not think that Warren is able to show prejudice from Wynn's alleged failure to investigate the Washingtons' statements. Accordingly, we cannot grant Warren's petition on this basis.

*b. Investigation into Warren's competence*

Warren also alleges that Wynn's failure to investigate his mental competence amounted to unconstitutionally ineffective assistance of counsel. Warren bases this argument primarily on a pre-sentencing psychiatric evaluation that Wynn commissioned. The evaluating doctor, Dr. Robert Rawski, diagnosed Warren with "Major Depression with Psychotic Features" and "Polysubstance Dependence"; he also said that Warren was possibly "suf-

fering from the early stages of Schizophrenia." (R. 21-3 at 58.) Warren argues that Wynn should have requested an evaluation prior to the plea hearing for the purpose of determining whether Warren was competent to enter his plea and that Wynn's failure to do so was unconstitutionally deficient. Requesting a competence evaluation and hearing, Warren contends, would have led to a "reasonable probability that . . . the court would have found that Warren was not competent to stand trial." (Appellant's Br. at 31.) We disagree.

As an initial matter, it is not clear that Warren raised this issue in the state courts. Rather, Warren made the related, though distinct, argument that Wynn was ineffective for failing to further investigate his mental health *at the time of the offense* as a potential defense at trial. Normally, on habeas appeals, we do not consider claims that have not been fairly presented to state courts and would now be procedurally barred by those courts. *Ward v. Jenkins*, 613 F.3d 692, 696 (7th Cir. 2010). That said, we also construe *pro se* petitions, such as Warren's during state post-conviction review, liberally when determining whether a claim has been fairly presented. *Id.* at 697. Furthermore, the state does not argue default here, and, as such, has forfeited the argument. *See Perruquet v. Briley*, 390 F.3d 505, 519 (7th Cir. 2004) ("failure to raise the defense [of procedural default] in a timely manner will result in a forfeiture"). Because the Wisconsin state courts have not addressed the merits of this claim, our review is *de novo*. *Cone*, 556 U.S. at 472.

Again, we turn to the two-pronged *Strickland* test, and note that "[c]ounsel has an obligation either to investi-

gate possible defenses or make reasonable decisions that particular investigations are unnecessary." *Burt v. Uchtman*, 422 F.3d 557, 566 (7th Cir. 2005) (*citing Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986)). In cases where a defendant contends that he received ineffective assistance because his attorney failed to request a competency hearing, "we have interpreted the [*Strickland*] prejudice inquiry as asking whether there is a reasonable probability the defendant would have been found unfit had a hearing been held." *Id*. at 567. To determine whether a defendant is competent, we ask "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Id.* at 564 (*quoting Dusky v. United States*, 362 U.S. 402, 402 (1960)).[2]

We find nothing in the evidence that Warren marshaled to suggest that there was reasonable probability that he would have been found unfit. Though Dr. Rawski's report indeed diagnosed Warren with mental illnesses and prescribed medication, it did not describe him as not competent to understand the legal proceedings. Rather, Dr. Rawski described Warren as "articulate" and "goal-directed." (R. 21-3 at 58.) Dr. Rawski also reported that Warren's "[c]ognition was intact"

---

[2] We note too that the constitutional standard for competence to enter a plea is the same as the standard to go to trial. *Godinez v. Moran*, 509 U.S. 389, 398-99 (1993).

and that his "[i]ntelligence is average." (*Id*.) Warren offers us no other evidence—such as affidavits from those who interacted with him or previous medical records—that would show that he was incapable of understanding the legal proceedings or assisting his lawyer at the time he made his plea. The plea colloquy evidences that Warren had rationally considered his options with his attorney, (R. 21-11), as does the transcript of the pre-plea scheduling conference, (R. 21-10). Indeed, Warren has also presented us with letters he wrote soon after his plea, in which he requested new counsel and that he be allowed to change his plea. All this evidence suggests a rather advanced understanding of the legal process and that Warren had a "rational as well as factual understanding of the proceedings." *Burt*, 422 F.3d at 564. Lacking any basis for the proposition that Warren was unfit to enter his plea, we cannot find that there was any prejudice to Warren in Wynn's failure to request a pre-plea competency hearing.

Warren offers us *Burt* to support his argument that Wynn was ineffective. Rather than providing support, however, *Burt* illuminates what we find lacking in Warren's petition. In *Burt*, an Illinois statute mandated that any defendant taking psychotropic medication at the time of trial (a population that included Burt) receive a fitness hearing. Burt's lawyers were unaware of this mandate. *Id*. at 567. Further, Burt's attorneys had many first-hand experiences with their client that should have led them to question his competence, even absent Illinois's requirement, including: they found it necessary to meet with him every day prior to court to "evaluate

his mental state"; they were concerned that the county jail was administering his psychotropic medications irregularly; Burt "demonstrated belligerent or explosive behavior," both in and out of the courtroom; and his attorneys were "continually afraid that Burt would commit violent acts in court." *Id*. at 568. One attorney even stated in an affidavit that he believed "Burt did not fully comprehend legal advice and that his behavior throughout the trial, particularly his decision to change his plea to guilty, was not rational." *Id*. All of these facts, and several others in the same vein, led us to conclude that Burt's attorneys were deficient for failing to request a competency hearing and "establish[ed] a reasonable probability that Burt would have been found incompetent at the time he pleaded guilty." *Id*. at 569.

Warren has not offered any such evidence here. Unlike Illinois, paragraph (2) of the Wisconsin statute specifically provides that "[a] defendant shall not be determined incompetent to proceed solely because medication has been or is being administered to restore or maintain competency." Wis. Stat. § 971.13(2). And indeed the record, rather than establishing a reasonable probability that Warren would have been found incompetent, shows that Warren met the constitutional standard for competence to enter a plea. Dr. Rawski's report described Warren's cognition as "intact," (R. 21-3 at 58), and Warren evinced a thorough understanding of the proceedings against him throughout. We therefore cannot find Wynn ineffective for failing to request a pre-plea competency hearing and cannot grant Warren's petition on this ground.

## 2. *Failure to communicate*

Warren next alleges a variety of communication-based errors. He says that Wynn did not adequately explain the original intentional homicide charge. Warren also alleges that Wynn neither provided him with a copy of the police report containing the Washingtons' statements nor explained the possibility of mounting a self-defense affirmative defense with him. As with the initial failure to investigate claim, the state court bypassed Warren's claim, so our review is *de novo*. *Cone*, 556 U.S. at 472. *Strickland* itself provides that an attorney can fall below the objectively reasonable level of performance by failing to "keep the defendant informed of important developments in the course of the prosecution." 466 U.S. at 688. But, even assuming that Wynn's performance failed to meet the standard in this case (and we need not opine on that), to find a constitutional violation, we must find prejudice to the defendant. *Id*. at 687. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The crux of Warren's argument is that, had he been aware of the information he alleges Wynn withheld, he would have gone to trial and claimed self-defense. When a petitioner makes that claim, our prejudice analysis "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id*. Moreover, this analysis "should be made objectively, without regard for the idiosyncrasies of the particular decisionmaker." *Id*. at 60

(internal quotation marks omitted). As we described above, there is simply nothing that would lead us to conclude that it is reasonably probable that the self-defense argument would have succeeded or that it would have been objectively reasonable to reject the plea deal. Accordingly, Warren cannot prove prejudice, and therefore cannot prevail on this ineffective assistance claim.

## B.  Due Process Violation for Plea Withdrawal

Warren next complains that his due process rights were violated when the state trial court refused to let him withdraw his no contest plea. This claim is closely related to Warren's complaints about the representation he received from Wynn. Specifically, he argues that his plea was not knowing or voluntary due to Wynn's ineffective assistance, and additionally that he may not have been competent to even enter the plea. We cannot find merit in either argument.

As with his claim that Wynn was ineffective for failing to request a competency hearing prior to the plea, it is not clear to us that Warren presented a due process argument to the state courts with regard to his plea. While Warren repeatedly petitioned the Wisconsin courts to withdraw his plea, his *pro se* arguments were couched in state law rather than federal constitutional protections. To be sure, the Wisconsin standard that a plea must be knowingly, intelligently, and voluntarily entered is the same as the constitutional due process

standard. *See* Wis. Stat. § 971.08; *see also Parke v. Raley*, 506 U.S. 20, 28-29 (1992). But here again, the state does not argue default and so any default argument has been forfeited. *Perruquet*, 390 F.3d at 519. Regardless, even under the more permissive *de novo* standard of review, Warren's arguments fail.

To survive a due process challenge, a plea must be knowing, voluntary, and intelligently entered. *Id.* The defendant bears the burden of proving that a plea did not meet those requirements. *Virsnieks v. Smith*, 521 F.3d 707, 714-15 (7th Cir. 2008). Generally, "pleas are accorded a great measure of finality because they are important components of this country's criminal justice system." *Id*. at 714 (internal quotation marks omitted). To determine whether a plea was knowing and voluntary, a court must look at "all of the relevant circumstances surrounding it." *Id*. "To enter a voluntary and intelligent plea, a defendant must have full awareness of the plea's direct consequences, real notice of the true nature of the charge against him, and understand the law in relation to the facts." *Id*. (internal quotation marks and citations omitted). "However, lawyers need not inform their clients of every possible defense, argument, or tactic, especially one not suggested by any evidence at the time." *St. Pierre v. Walls,* 297 F.3d 617, 635 (7th Cir. 2002) (emphasis omitted).

*1. Trial counsel's assistance and the plea*

Warren presents three potential reasons that his plea could have been unknowing based on Wynn's assistance: he claims that he was unaware that he had the ability to pursue a self-defense claim at an intentional homicide trial; he says that he was unaware that there were witnesses who could support a self-defense claim; and he says that he did not know that the basis for the intentional homicide charge was wrong. The record does not support Warren on any of these points. Instead, it shows a defendant who understood the bargain he was making and who was informed of his rights.

Warren agreed during the plea colloquy that he understood the defenses he was relinquishing. (R. 21-11 at 10.) He now contends, without additional support, that his statement was incorrect, or at least incomplete as it related to self-defense and the original intentional homicide charge. It strains our credulity to believe that Warren did not know that self-defense could be presented as a defense to intentional homicide. We need not rely on our instincts, however. During the plea hearing (and before the plea was finalized), Wynn, the trial judge, and the prosecutor had a discussion regarding self-defense considerations, noting that Wynn had discussed the defense with Warren, and even citing a recent Wisconsin case as a motivating factor for the charge being reduced and the acceptance of the plea deal. (R. 21-11 at 18-19.) Therefore, Warren asks us to ignore not only his statements to the court and common sense, but also a discussion that occurred in open court,

in his presence. That we will not do. We refuse to find that Warren's plea was unknowing because he lacked knowledge of a potential defense that had been discussed in his presence immediately before his plea was accepted.

As for the claim of the supposed supporting witnesses, we have already addressed the issue. There is nothing in the police report, and Warren has presented nothing since, that indicates that the Washingtons actually could have supported any claim of self-defense. Given that, Warren's alleged lack of knowledge cannot be the basis for overturning his plea.

Warren's next argument—that he did not know the basis for the intentional homicide charge was wrong—is also unsupported by the record. Warren argues that the original charge was based on the incorrect allegation that he planned to rob Morrow. He says that, had he been aware of the allegation, he would not have agreed to plead to a lesser charge. The argument that he was unaware of the robbery allegation is simply not true. The police report reflects the fact that officers explicitly presented Warren with the allegation after his arrest and that he denied it. (R. 21-8 at 47.) Warren does not challenge the report's veracity (nor did he at any other time). Furthermore, the transcript of the plea hearing indicates that Wynn discussed the robbery theory with Warren. (R. 21-11 at 12-15, 18-19.) Indeed, nothing that Warren asserts leads us to the conclusion that the plea was unknowing, involuntary, or unintelligent on account of Wynn's assistance.

*2.  Competence to enter the plea*

Similarly, we cannot find a due process violation in the plea based on Warren's alleged lack of mental capacity. Again, we look at "all of the relevant circumstances surrounding" the plea. *See Brady v. United States*, 397 U.S. 742, 749 (1970). Here, Warren does not allege that he actually lacked the capacity to enter a knowing and voluntary plea, however, and offers no evidence other than Dr. Rawski's report on the issue. Instead, he argues that he was denied due process because his capacity was not determined and the report raises "serious questions." (Appellant's Br. at 35.) Warren "might not" have been competent to enter his plea as he argues, (*id.* at 36), but given all of the available evidence (including Dr. Rawski's report), that possibility appears very unlikely. To recap: Dr. Rawski described Warren as "articulate" and "goal-directed" and stated that Warren's "[c]ognition was intact." (R. 21-3 at 58.) Warren ably participated throughout the legal proceedings. As Warren correctly notes, due process requires a court to order a competency hearing when there is "bona fide doubt as to the defendant's competency." *Burt*, 422 F.3d at 564. We cannot find any such doubt in the evidence Warren presents. Some theoretical uncertainty is not enough to form the basis of a due process violation.

*C.  Ineffective Assistance of Sentencing Counsel*

Warren next alleges that Theodore Nantz, the court-appointed attorney who succeeded Wynn, was also unconstitutionally ineffective. Warren argues that Nantz

was ineffective for failing to raise the same issues he claims Wynn should have raised: that the court could not be certain Warren was competent to enter the plea, and that Warren's alleged lack of knowledge of the Washingtons' statements led to his plea being unknowing. Again, the state court bypassed this argument, and we review it *de novo*. *Cone*, 556 U.S. at 472. Setting aside the fact that a defendant is not entitled to have counsel raise every non-frivolous claim, *Jones v. Barnes*, 463 U.S. 745, 754 (1983), we have found that these arguments lack merit. Counsel is not ineffective for failing to raise meritless claims. *United States v. Stewart*, 388 F.3d 1079, 1085 (7th Cir. 2004); *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996).

### D.  Due Process Violation for Sentencing

Warren next argues that the state trial court violated his due process rights by considering his attempted plea withdrawal against him. Specifically, the court characterized Warren as attempting to "weasel out of" his plea bargain. (Appellant's Br. at 43.) The government urges us to refrain from considering this claim because the Wisconsin state courts held that it was procedurally defaulted. (Appellee's Br. at 59); (R. 21-2 at 7). Warren counters by arguing that, if the claim has merit, Bowe's ineffective assistance, for failing to raise the claim on direct appeal, could potentially excuse his procedural default. (Appellant's Reply Br. at 18) (citing *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012)).

We note first that Warren has certainly defaulted this argument by failing to comply with proper Wisconsin procedure. *See Farmer v. Litscher*, 303 F.3d 840, 846 (7th Cir. 2002) ("A federal court will not review a question of federal law decided by a state court if the state-court decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment"); *State v. Escalona-Naranjo*, 517 N.W.2d 157, 162 (Wis. 1994) (claims that the defendant failed to raise may not be the basis for post-conviction relief, unless the court determines that there was a "sufficient reason" for the failure). Because we must consider the possibility of excuse, though, we take up the merits of Warren's due process argument here and find that the claim lacks merit. Again, no state court considered the merits of Warren's argument, so we review the issue *de novo*. *Cone*, 556 U.S. at 472.

A defendant is entitled to have sentencing determinations made based on reliable evidence rather than speculation or unfounded allegations. *See, e.g., United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009). Because the judge is the factfinder at sentencing, however, he may draw reasonable conclusions about the testimony and evidence presented. *United States v. Hankton*, 432 F.3d 779, 786 n.14 (7th Cir. 2005). The "key inquiry" posed by a due process challenge to a sentencing determination is whether the court's findings "were sufficiently based on reliable evidence to satisfy due process, or if they amount to speculation." *England*, 555 F.3d at 622 (internal quotation marks omitted). "Evidence will satisfy the reliability requirement if it bears sufficient

indicia of reliability to support its probable accuracy."
*Id*. (internal brackets and quotation marks omitted).[3]

During sentencing, while discussing whether Warren
accepted responsibility for his crimes, the state trial
court judge made the following remark:

> So far as taking responsibility is concerned, it
> seems to be whatever suits you and whatever is
> in your best interest at the time. And it appeared
> a week or two ago it was in your best interest to
> try to weasel out of this plea, so-to-speak, and not
> take responsibility because you didn't really
> like the recommendation of the presentence writer.

(R. 21-14 at 12.) Warren characterizes this as an instance
where the court relied on an incorrect assumption to
determine the sentence, an error that might warrant
overturning the sentence. We think this misconstrues
the record, and as such, is not a basis for granting
Warren's petition.

The court's comment that Warren was trying to
"weasel out of" his no contest plea came during
the court's appraisal of Warren's acceptance of responsi-

---

[3] The district court interpreted Warren's *pro se* petition to
implicate judicial bias. *Warren*, 2011 WL 6016630, at *3 (dis-
cussing *Franklin v. McCaughtry*, 398 F.3d 955 (7th Cir. 2005)).
Warren has clarified on appeal that his due process con-
cern relates to reliability, and, accordingly, we address
that argument.

bility. Read in that context, we think the court was attempting to explain, if perhaps inartfully, why it did not credit the reliability of Warren's expressions of remorse. Warren's statements of acceptance flatly contradicted the arguments he made to the court in attempting to withdraw his plea. This, understandably, caused the court to be skeptical of both Warren's purported acceptance of responsibility as well as his motives for attempting to withdraw the plea.

When we are called upon to review a federal district court's appraisal of a defendant's acceptance of responsibility, we give great deference to the trial court. *See United States v. Gilbertson*, 435 F.3d 790, 798-99 (7th Cir. 2006). We do so because the trial judge is uniquely positioned to assess the credibility of the defendant before her. *See United States v. Cunningham*, 103 F.3d 596, 598 (7th Cir. 1996). Such deference is also appropriate here. The state trial judge was in a much better position to gauge whether Warren was "motivated by genuine acceptance of responsibility or by a self-serving desire to minimize his own punishment," a task that appellate judges are "ill-equipped" to carry out. *Id*. The inconsistency between Warren's argument to withdraw his plea and his ostensible acceptance of responsibility is a sufficient indicium of reliability to satisfy due process. Because this claim lacks merit, Bowe could not have been ineffective for failing to raise it, and Warren's procedural default in the state court is not excused.

*E.  Ineffective Assistance of Appellate Counsel*

Finally, Warren argues that his counsel on direct appeal—Bowe—was also unconstitutionally ineffective for failing to raise the ineffective assistance claims regarding Wynn and Nantz. This is yet another claim that the state court bypassed, and our review is again *de novo*. *Cone*, 556 U.S. at 472. The framework for assessing the constitutional effectiveness of appellate counsel is the same two-pronged *Strickland* test as for effectiveness of trial counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000). Because we did not find merit in the previous two ineffective assistance claims (or in the due process claim), we cannot find Bowe unconstitutionally deficient for failing to raise them. It is axiomatic that Warren was not prejudiced by this failure. *See Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010). Accordingly, we cannot grant Warren's petition on this ground either.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of the petition for a writ of habeas corpus.