# IN THE COURT OF APPEALS OF IOWA

No. 4-010 / 12-2139
Filed May 29, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CORTRAIL ANDRE HARRIS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler and Todd A. Geer, Judges.

Defendant appeals his convictions, asserting he received ineffective assistance of counsel at trial. **AFFIRMED.**

Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brad Walz, Assistant County Attorney, for appellee.

Heard by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

In this consolidated appeal of two separate criminal cases, Cortrail Harris appeals his convictions for possession of more than fifty grams of cocaine base with intent to deliver, and possession of crack cocaine, third offense, as well as his conviction for a drug tax stamp violation. He contends he received ineffective assistance of counsel at trial in both cases. In one case, Harris maintains counsel was ineffective for failing to file a motion to suppress following the execution of a search warrant. In both cases he also maintains counsel was ineffective for failing to timely assert that Harris was not mentally competent to stand trial or enter a plea. We conclude filing a motion to suppress would have been meritless, but we preserve Harris's ineffective-assistance-of-counsel claims regarding his competency for postconviction relief. Finding no basis to disturb the convictions, we affirm.

**I. Background Facts and Proceedings.**

On October 19, 2009, the State charged Harris with possession of crack cocaine, third offense, in violation of Iowa Code section 124.401(5)(c) (2009) (FECR164821).

On November 17, 2010, Officer Herkelman of the Tri-County Drug Enforcement Task Force obtained a warrant to search Harris' home. As a result of the search, the State charged Harris with possession with intent deliver more than fifty grams of crack cocaine, in violation of section 124.401(1), and a drug tax stamp violation, in violation of section 453B.12 (FECR172905).

On April 3, 2012, a jury trial on the November 2010 charges commenced. Harris was found guilty of both charges on April 6, 2012, and the court set trial on the habitual offender sentencing enhancements for May 8, 2012. On the date scheduled for trial, Harris admitted to being a second offender and admitted to his prior felony convictions.

On June 5, 2012, Harris entered an *Alford* plea[1] regarding the October 2009 charge for possession of crack cocaine, third offense. Three days later Harris filed a motion in arrest of judgment, asserting he "suffers from bipolar disorder, schizophrenia, and mental retardation, and as a result, did not fully understand the legal consequences of his guilty plea or that his plea was not made knowingly, voluntarily, or intelligently." On June 12, 2012, Harris filed an application for psychological examination to determine competency.

A hearing was held on the matter on July 6, 2012. The court stated:

> I have had, during the trial, an opportunity to observe Mr. Harris communicating rather extensively with [his attorney] and feel that he was able to assist in his defense. I think it's highly unlikely that it's going to be determined that Mr. Harris is incompetent, but I do believe it's appropriate at least to have him evaluated at this time.

The court then entered an order granting Harris' application. Because Harris had not been sentenced in either case, the court cross-filed its order for the competency evaluation and suspended all proceedings in both cases.

Harris underwent psychological evaluation on September 11, 2012. He was evaluated by both Dr. Arnold Andersen, M.D., and Dr. John Bayless, Ph.D.[2] Both completed and filed separate reports, which were admitted and reviewed by

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).
[2] Dr. Bayless is a professor of clinical psychiatry at the University of Iowa.

the court.  Each concluded it was impossible to determine Harris' competency because of his lack of effort and intentional vagueness during the examination.

The court held a hearing to determine competency on October 29, 2012. In a written order, filed October 30, 2012, the court found Harris was competent to stand trial.

After the competency hearing but before sentencing, Harris filed a pro se motion in arrest of judgment in each of the cases.  On November 19, 2012, the district court conducted a hearing on Harris' motions and overruled both of them. The court then imposed sentencing for both cases.  In case FECR172905, for his conviction of possession with intent deliver more than fifty grams of crack cocaine, the court sentenced Harris to an indeterminate term of imprisonment not to exceed 150 years with a one-third minimum term.  For the drug tax stamp violation, Harris was sentenced to an indeterminate term, not to exceed fifteen years, which the court set to run concurrently to the 150-year term.  In case FECR164821, for his conviction of possession of crack cocaine, third offense, Harris was also sentenced to an indeterminate term of imprisonment not to exceed fifteen years; this term was also set to run concurrently.  Harris appeals.

**II. Standard of Review.**

A defendant may raise an ineffective-assistance claim on direct appeal if he has reasonable grounds to believe the record is adequate for us to address the claim on direct appeal. *State v. Straw*, 709 N.W. 2d 128, 133 (Iowa 2006).  If we determine the record is adequate, we may decide the claim.  *Id*.  We review claims for ineffective assistance of counsel de novo.  *State v. Rodriguez*, 804

N.W.2d 844, 848 (Iowa 2011). This is our standard because such claims have their basis in the Sixth Amendment to the United States Constitution. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

The standard of review where the issue of the defendant's competency to stand trial is raised is de novo review, as constitutional rights are implicated. *State v. Lyman*, 776 N.W.2d 865, 873 (Iowa 2010).

## III. Discussion.

To succeed on his claims, Harris must show by a preponderance of the evidence (1) his counsel failed to perform an essential duty and (2) prejudice resulted. *See Rodriguez*, 804 N.W.2d at 848. To prove counsel failed to perform an essential duty, Harris must show "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). In doing so, he must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See id.* at 689. Prejudice has resulted when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bowman v. State*, 710 N.W.2d 200, 203 (Iowa 2006). We can affirm if either prong is absent and need not engage in both prongs of the analysis if one is lacking. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010).

"Ineffective assistance of counsel claims are an exception to our normal rules of error preservation." *Rodriguez*, 804 N.W.2d at 848. We generally preserve ineffective-assistance-of-counsel claims for postconviction relief

proceedings. *State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011). "Only in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal." *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). We prefer to reserve such claims for development of the record and to allow trial counsel to defend against the charge. *Id.* If the record is inadequate to address the claim on direct appeal, we must preserve the claim for a postconviction-relief proceeding, regardless of the potential viability of the claim.[3] *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010). We find the record adequate to address this issue in respect to the claim that counsel was ineffective for failing to file a motion to suppress.

**A. Motion to Suppress.**

Harris contends he received ineffective assistance because his trial attorney failed to file a motion to suppress. Harris claims the police obtained evidence through execution of a defective warrant. In support of this contention, Harris maintains his trial attorney should have challenged the existence of probable cause to support the warrant issued to search his home because "the warrant potentially lacked probable cause because the confidential information may not have been reliable." Counsel is not considered ineffective for failing to seek the suppression of admissible evidence. *Love v. State*, 543 N.W.2d 621, 623 (Iowa Ct. App. 1995). Thus, Harris must establish that the evidence was inadmissible. Here, Harris has not identified any reasons why the confidential

---

[3] *See also* Iowa Code § 814.7(3), which provides, "If an ineffective assistance of counsel claim is raised on direct appeal from the criminal proceedings, the court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822."

informant may not have been reliable or that the application did not otherwise support a finding of probable cause. Notwithstanding, we will examine the record to determine if the general allegations have merit.

Probable cause to search requires a probability determination that "(1) the items sought are connected to criminal activity and (2) the items sought will be found in the place to be searched." *United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir. 1995); *see State v. Weir*, 414 N.W.2d 327, 330 (Iowa 1987). The issuing judge "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information," probable cause exists. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *accord State v. Hennon*, 314 N.W.2d 405, 407 (Iowa 1982). In doing so, the judge may rely on "reasonable, common sense inferences" from the information presented. *See State v. Green*, 540 N.W.2d 649, 655 (Iowa 1997). "The same approach is followed in determining whether evidence seized pursuant to a warrant must be suppressed; the affidavit of probable cause is interpreted in a common sense, rather than a hypertechnical, manner." *State v. Gogg*, 561 N.W.2d 360, 363–64 (Iowa 1997).

"The application or sworn testimony supplied in support of the application must establish the credibility of the informant or the credibility of the information given by the informant." Iowa Code § 808.3.

> Factors tending to enhance informant credibility include past reliability, the fact that the informant was named, whether the informant directly witnessed the crime or fruits of it in the possession of the accused, the specificity of the facts detailed by

the informant, whether the information furnished is against the informant's penal interest, whether the informant was trusted by the accused, and whether the information was not public knowledge.

*State v. Niehaus*, 452 N.W.2d 184, 190 (Iowa 1990). Here, the search warrant application contains ample evidence to support a finding the confidential information (CI) was reliable and credible.

The warrant application completed by Officer Herkelman showed the CI provided reliable information in the past, stating the CI was a "mature individual" who had supplied information "eight plus" times. This past information had led to the discovery and seizure of stolen property, drugs, or other contraband.

Regarding evidence for the warrant to search Harris' residence, the application stated the CI reported to Officer Herkelman that a man who went by the name Corky was involved in the sale of crack cocaine at a specific address in Waterloo, Iowa. The CI also described the vehicle driven by Corky as a blue and white Chevrolet Monte Carlo. After some investigation, Officer Herkelman learned Harris was known by the nickname Corky and had been previously arrested for, among other things, possession with intent to distribute (cocaine) and drug tax stamp violation. Officer Herkelman provided the CI with a past booking photo of Harris, and the CI confirmed that was the person known as Corky.

The CI made three controlled buys of crack cocaine from Harris at the same address the informant had provided Officer Herkelman. Each time, Officer Herkelman provided the CI with pre-serialized money and a transmitter. The last of the controlled buys took place twenty-four to seventy-two hours before the

warrant application was made. Furthermore, Officer Herkelman drove by the address on a fourth date and observed Harris sitting on the trunk of a blue and white Chevrolet Monte Carlo.

As the magistrate found, the warrant application established the credibility of the CI and the information provided. Under these facts, there is not a reasonable probability that the district court would have granted the motion to suppress for lack of probable cause, and counsel was not ineffective in failing to move to suppress the evidence obtained from executing the search warrant. *See State v. Graves*, 668 N.W.2d 860, 881 (Iowa 2003) ("Trial counsel has no duty to raise an issue that has no merit.").

**B. Lack of Mental Competency.**

Harris also contends trial counsel was ineffective for failing to timely assert Harris lacked the mental competency to stand trial. Counsel did file an application for psychological examination and Harris was deemed competent, but only after Harris was found guilty of possession with intent to deliver more than fifty grams of crack cocaine and a drug tax stamp violation and had pled guilty to possession of crack cocaine, third offense. Harris does not appeal the district court's determination that he was competent at the time the psychological examination was completed before sentencing.

Rather, Harris argues he may not have been competent at the time he stood trial and at the time he pled guilty. He contends that he suffered a head injury at a younger age and has a low IQ. He claims trial counsel was

reasonably alerted to the question of his competency at the outset of these proceedings and should have gathered evidence to confirm his incompetency.

"It is fundamental that a defendant may not be tried or convicted while he is incompetent to stand trial or to assist in his own defense. To deprive him of this right is to deprive him of due process and a fair trial." *State v. Lyon*, 293 N.W.2d 8, 12 (Iowa 1980). The test of competency to stand trial is whether the accused appreciates the charges against him, understands the proceedings, and can effectively assist the defense. *See* Iowa Code § 812.3 (2009); *see also Lyon*, 293 N.W.2d at 9. Whether an inquiry is required on a defendant's competency depends on several factors. These include (1) the defendant's irrational behavior, (2) any demeanor at the trial that suggests a competency problem, and (3) any prior medical opinion on the defendant's competency to stand trial. *Drope v. Missouri*, 420 U.S. 162, 180 (1975); *see also State v. Edwards*, 507 N.W.2d 393, 395 (Iowa 1993). The court must hold a hearing regarding the defendant's competency if the "record contains information from which a reasonable person would believe a substantial question of the defendant's competency exists." *See State v. Kempf*, 282 N.W.2d 704, 706 (Iowa 1979).

In the present case, Harris was brought to trial for possession with intent to deliver more than fifty grams of crack cocaine and a drug tax stamp violation on April 3, 2012, and found guilty on April 6, 2012. On May 8, 2012, Harris admitted to being a second offender. And on June 5, 2012, Harris entered an *Alford* plea regarding the charge of possession of crack cocaine, third offense. On June 12, 2012, trial counsel filed an application for psychological examination

to determine Harris' competency before sentencing and judgments of convictions were entered.[4] Harris underwent a psychological examination on September 11, 2012 with two separate doctors. A hearing on the matter was held on October 29, 2012, prior to sentencing and the entry of judgments of convictions.

The court reviewed the reports from each of the doctors, which both stated Harris' performance was unreliable because of lack of effort and intentional vagueness. Dr. Bayless' report stated:

> This patient was not performing in an effortful manner, and test results certainly raise the question of malingering given the opportunity for secondary gain. The patient's mental status performances show clear inconsistencies, are notably poorer than all groups of patients with actual clinical illnesses, and are inconsistent with his history.

Having reviewed the doctors' reports, as well as Harris' telephone conversations from jail and his behavior throughout the proceedings, the district court found Harris legally competent, stating:

> The psychological examinations concluded that defendant was malingering and was failing to put forth effort during the course of the evaluation. Defendant has corresponded with the court during the course of these proceedings, showing an understanding of the proceedings. Tape recorded conversations of the defendant show an understanding of the charges, understanding of the proceedings and ability to communicate. Defendant communicated effectively with individuals over the telephone and even displayed a sense of humor. Defendant also suggested an intent to malinger during the competency evaluation when he stated that he knows "how to do this shit."
> Further, during trial and hearings, the court observed defendant reacting to testimony and rulings, showing an ability to comprehend. The court also observed the defendant communicating regularly with counsel. Further, during the course of the proceedings, the court found that defendant knowingly and intelligently waived his right to be tried within one year, and Judge

---

[4] Harris was sentenced in both cases on November 19, 2012, and the written sentencing orders were filed November 20, 2012.

> Stigler found that defendant knowingly and intelligently entered his plea of guilty.
>     While defendant may have some mental limitations, he is clearly legally competent under Chapter 812, Code of Iowa.

The district court was able to make a meaningful inquiry into Harris' mental competency when trial counsel formally raised the issue and found Harris was competent to stand trial before judgments of convictions were entered.

The difficulty here is that the issue of whether Harris was competent prior to his trial and entry of his *Alford* plea was not raised before the district court. We acknowledge Harris' attorney took blame for not raising the issue earlier during the competency hearing. We also note the district court, in ruling on the issue, considered facts related to Harris' conduct during the trial and various hearings. However, Harris' post-trial application did not seek a determination of the state of Harris' competency prior to the trial or entry of his *Alford* plea, nor did the district court's ruling encompass that issue. The fact that Harris was found to be competent post-trial and post-entry of his *Alford* plea does not translate into a conclusion that he was competent throughout these proceedings.

Whether defense counsel should have raised the issue of Harris' competency prior to the trial and entry of his *Alford* plea, made a more thorough investigation, and presented evidence to support Harris' incompetency are issues more properly the subject of an evidentiary hearing in a postconviction-relief proceeding. Moreover, although we would not expect Harris' IQ to have fluctuated during these proceedings, we are unable to speculate whether his prior head injury would have caused symptoms affecting his competency at different stages of these proceedings. We presume a defendant is competent to

stand trial. *Lyman*, 776 N.W.2d at 874. Accordingly, Harris' claims regarding competency should be preserved for possible postconviction relief as the record is not adequate to determine the claim on appeal.[5]

## IV. Conclusion.

After considering each issue raised by the defendant, we find no basis to disturb Harris' convictions but preserve his claims of ineffective assistance of counsel in both cases in regard to his competency prior to the trial and entry of his *Alford* plea for possible postconviction relief. We affirm.

**AFFIRMED.**

Potterfield, J., concurs; McDonald, J., concurs specially.

---

[5] It still may be possible to hold a competency hearing post-trial and post-entry of the *Alford* plea to determine Harris' competency prior to the trial and entry of the *Alford* plea. A competency hearing is still permissible "if a meaningful inquiry into the defendant's competency can still be made." *State v. Rhode*, 503 N.W.2d 27, 33–34 (Iowa Ct. App. 1993). In *Rhodes*, the determination of the defendant's competency was not made "until some twenty months after reasonable grounds had appeared in the record for holding a competency hearing." *Id.* at 32. Such a competency hearing may be the proper remedy in lieu of vacating the convictions. *See Harkins v. Wyrick*, 552 F.2d 1308, 1311 (8th Cir. 1977); *but see State v. Myers*, 460 N.W.2d 458,460 (Iowa 1990) (stating competency issue may not be capable of being cured by an ex post facto determination of competency after the trial); and *see Drope,* 420 U.S. at 183. (concluding the inherent difficulties in a determination after-the-fact may make the procedure inadequate).

**MCDONALD, J.** (concurring specially)

I concur in the court's judgment. I write specially to note the record is sufficient to resolve on direct appeal Harris's claim his counsel was ineffective for failing to assert Harris was incompetent to proceed. To establish a claim for ineffective assistance of counsel, Harris must show "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Failure to prove either element is fatal to an ineffective-assistance claim. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). With respect to the prejudice prong, the ultimate inquiry is whether trial counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that the conviction is unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires the defendant to establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Within the context of a claim that counsel failed to request a competency hearing, prejudice can be established by proving a reasonably probability the defendant would have been found unfit had a competency hearing been held. *See Warren v. Baenen*, 712 F.3d 1090, 1100 (7th Cir. 2013); *People v. Mitchell*, 727 N.E.2d 254, 268 (Ill. 2000).

The only thing in this record indicating that competency might be at issue is Harris's self-serving statement that he suffers from various mental-health conditions. This does not necessarily mean he is incompetent to proceed.

> Fitness to stand trial and mental illness are not synonymous. Fitness speaks only to a person's ability to function within the

context of a trial. It does not refer to sanity or competence in other areas. A defendant can be fit for trial although his or her mind may be otherwise unsound.

*People v. Tuduj*, 2014 WL 1156308, at *24 (Ill. App. Ct. March 21, 2014) (citations and internal quotation marks omitted). Under Iowa Code chapter 812, Harris is required to establish he was suffering from a mental disorder that prevented him from appreciating the charges, understanding the proceedings, or assisting effectively in the defense. Iowa Code § 812.3. There is nothing in this record supporting a finding of incompetency or a reasonable probability the defendant was incompetent at the time of trial or plea.

First and foremost, the trial judge was able to observe Harris during trial. Based on its observations during trial, the district court found Harris understood the proceedings and was able to communicate with counsel. The judge that accepted Harris's plea on the possession charge found Harris was acting knowingly and voluntarily. The record confirms each of these findings. Harris repeatedly addressed the court during the proceedings and intelligently expressed his concerns regarding the case. Harris wrote letters and motions to the district court regarding particular aspects of his case, including requests for discovery and to take depositions. Harris filed motions to continue on his own behalf, contending his case was not ready for trial and stating he needed more time to evaluate a plea offer with his family. Indeed, the fact that Harris filed his own motion challenging his competency after a jury found him guilty and after he pleaded guilty but prior to sentencing is evidence he was competent to proceed and was trying to game the system.

Second, the State introduced hours of phone calls made by Harris from jail during the pendency of these proceedings. The phone calls leave no doubt that Harris's competency is really not at issue. Harris speaks intelligently to his associates and family about developments in his case and the impact of particular proceedings. He relays the arguments his lawyer is making on his behalf and discusses what evidence helps or hurts his case. Harris asks friends to call other individuals for him for a variety of reasons. He has no difficulty recalling names and telephone numbers. Harris makes jokes with his friends and at all times seems to understand his circumstances. At the time Harris raised the issue of his competency with the district court, he is recorded during a telephone call laughingly implying he can beat the competency evaluation because he knows "how to do this shit." Unfortunately for him, he really did not.

Third, there is no medical evidence that Harris was incompetent at any point in these proceedings. The doctors examining Harris could only conclude that Harris was malingering and not putting forth effort because the results of their examinations were not consistent with Harris's self-reported diagnosis. The doctors' conclusions are consistent with Harris's own statements made from jail evidencing that he intended to work the system to be declared incompetent. The doctors' conclusions are also consistent with the district court's finding that it did not observe any signs Harris was not competent to proceed.

Harris is a malingerer and was competent at all times relevant to these proceedings. Thus, even if counsel would have earlier raised the issue of Harris's competency, there is no reasonable probability Harris would be able to

carry his burden of establishing he was not competent. *See State v. Pedersen*, 309 N.W.2d 490, 496 (Iowa 1981) (holding it is defendant's burden to establish incompetency). He suffered no prejudice. *See State v. Hutchins*, No. 99-1959, 2001 WL 804365, at *5 (Iowa Ct. App. July 18, 2001) ("Even if we were to assume trial counsel failed in an essential duty to conduct an inquiry into Hutchins' competency, Hutchins has not shown a reasonable probability that he would have been deemed incompetent if such an inquiry had been made. Without proof of prejudice, he cannot demonstrate ineffective assistance of his trial counsel."); *see also Blekeney v. United States*, 77 A.3d 328, 350 (D.C. 2013) (holding no prejudice where facts—including medical records and trial court observations—showed defendant was competent at time of trial); *Valentine v. State*, 748 S.E.2d 437, 441 (Ga. 2013) (denying ineffective-assistance claim on direct appeal where record did not reveal any basis for concluding defendant was not competent during trial); *Tuduj*, 2014 WL 1156308, at *27 ("Although we . . . are looking at a cold record, our review of that record does not reveal a defendant who was unable to meaningfully participate in his defense or cooperate with counsel. To the contrary, the record shows that defendant actively participated in his own defense during all stages of the proceedings in the trial court."); *State v. Baker*, 837 N.W.2d 91, 97-98 (Neb. 2013) (concluding defendant did not establish prejudice where defendant's "claims of incompetence are contradicted by the record in each case, wherein the trial court observed [the defendant] and had no reason to doubt his competence").

Accordingly, I concur in the judgment.